**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:25-po-2** |
| | : | |
| **v.** | : | **(Caraballo, M.J.)** |
| | : | |
| **DARWIN TITUANA-VILLAMAR** | : | |

# MEMORANDUM

## I. Introduction

This matter is before the Court on defendant Darwin Tituana-Villamar's Motion to Dismiss the Information. Doc. 29. As the Information charges Tituana-Villamar with violating Title 8, United States Code, Section 1306(b), a Class C misdemeanor punishable by up to 30 days of imprisonment, 18 U.S.C. § 3559(a)(8), the Court has jurisdiction pursuant to Title 28, United States Code, Section 636(a)(4), which provides magistrate judges with jurisdiction over petty offenses. *See also* 18 U.S.C. § 19 ("[T]he term 'petty offense' means a Class B misdemeanor . . . ."). As set forth below, the United States failed to allege the correct *mens rea* in the Information. Accordingly, the Court will grant the motion and dismiss the Information, without prejudice.

## II. Background

Tituana-Villamar's factual averments are generally uncontested. On October 10, 2016, he signed a Form I-485, an Application to Register Permanent Residence or Adjust Status, also known as a green card application. Doc. 30-1. The Form I-485 includes an address change requirement that reads as follows:

> **Your Registration With U.S. Citizenship and Immigration Services**
>
> "I understand and acknowledge that, under section 262 of the Immigration and Nationality Act (INA), as an alien who has been or will be in the United States for more than 30 days, I am required to register with the U.S. Citizenship and Immigration Services (USCIS). I understand and acknowledge that, under section 265 of the INA, I am required to provide USCIS with my current address and written notice of any change of address within 10 days of the change. I understand and acknowledge that if I change my address without providing written notice to USCIS, I will be held responsible for any communications sent to me at the most recent address that I provided to USCIS. I further understand and acknowledge that, if removal proceedings are initiated against me and I fail to attend any hearing, including an initial hearing based on service of the Notice to Appear at the most recent address that I provided to USCIS or as otherwise provided by law, I may be ordered removed in my absence, arrested, and removed from the United States."

Doc. 30-1 at 5. Tituana-Villamar subsequently became a green card holder in March 2017. Doc. 30 at 3.

In 2024, Tituana-Villamar completed a Pennsylvania Driver's License application with an address that had not been updated with immigration authorities. *Id.* Later, police were called to respond to a dispute between Tituana-Villamar and his roommate at an address which did not match the address that the Department of Homeland Security had on file. *Id.* Weeks after that police encounter, on approximately April 24, 2025, Homeland Security Investigations agents explained the address change reporting requirement to Tituana-Villamar and emailed him instructions on how to submit his address change. *Id.*

The next day, April 25, 2025, the United States filed an Information charging Tituana-Villamar with a single count of Failure to Notify Change of Address, pursuant to Title 8, United States Code, Section 1306(b). Doc. 1. The Information alleges that Tituana-Villamar "did knowingly fail to provide a written notice to the Attorney General of his change of address, within ten days of the date of such change . . . ." *Id.* When agents returned to his home to serve a summons for his initial appearance in this case, Tituana-Villamar provided them with a

copy of his completed change of address Form AR-11, dated April 26, 2025, and advised that he had submitted it. Doc. 30 at 3–4.

On April 27, 2026, Tituana-Villamar filed a Motion to Dismiss the Information, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(iii) and (v), and 12(b)(1). Docs. 29–30. The United States filed an opposition, and Tituana-Villamar filed a reply, Docs. 32; 35, rendering the motion ripe for adjudication.

## III. Discussion

Rule 12(b)(3)(B) permits a criminal defendant to move for the pretrial dismissal of an information for "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v). Tituana-Villamar contends that the Court should dismiss the Information because it alleges a *mens rea* of knowingly, instead of willfully. Doc. 30 at 2. He also avers that he did not receive constitutionally sufficient notice, when signing the Form I-485, that the failure to update his address would trigger potential criminal penalties. *Id.* The United States refutes both positions. Doc. 32.

Section 1306(b) penalizes violations of Section 1305(a), which mandates that certain noncitizens "shall notify the Attorney General in

writing of each change of address and new address within ten days from the date of such change." 8 U.S.C. § 1305(a). Section 1306(b) does not explicitly state the required mental state for criminal accountability. Instead, it reads in its entirety:

> Any alien or any parent or legal guardian in the United States of any alien who fails to give written notice to the Attorney General, as required by section 1305 of this title, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $200 or be imprisoned not more than thirty days, or both. Irrespective of whether an alien is convicted and punished as herein provided, any alien who fails to give written notice to the Attorney General, as required by section 1305 of this title, shall be taken into custody and removed in the manner provided by part IV of this subchapter, *unless* such alien establishes to the satisfaction of the Attorney General that *such failure was reasonably excusable or was not willful.*

8 U.S.C. § 1306(b) (emphases added).

The parties do not offer, and the Court has not identified, any precedential authority establishing whether a violation of Section 1306 exists when a defendant merely acts knowingly, instead of willfully. The distinction is meaningful, as the Supreme Court defined willfulness as the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). By contrast, a mean rea of knowingly presents a lower burden of proof. *See United States v. Flores*,

454 F.3d 149, 160 (3d Cir. 2006) (approving jury instruction that "[a]n act is done 'knowingly' if done voluntarily and intentionally, and not because of deception, mistake or accident or some other innocent reason."). "In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' . . . [while] the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 191–93, (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

Absent clear guidance, we start with the plain language of the statute. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text"). Although Section 1306(b) does not explicitly state whether a knowing or willful *mens rea* is required, it contains a statutory defense for any alien who "establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful." 8 U.S.C. § 1306(b). By logical extension, if showing an absence of willfulness exculpates a criminal defendant, an equal standard must apply to inculpate him in the first instance. Otherwise, we would be left with an absurd result,

whereby Tituana-Villamar would face a higher threshold to prove his innocence than the government would face to prove his guilt, despite the latter party bearing the burden of proof. And the United States offers no rationale for reading a *mens rea* of knowingly into the statutory language, when the only reference to any state of mind is willfulness.

The United States posits that because Section 1306(a)—a Class B misdemeanor that criminalizes an alien's willful failure to register—expressly requires a showing of willfulness, the absence of similar statutory language in Section 1306(b) evinces Congressional intent for the two statutes to bear different requirements. Doc. 32 at 4–5. Although that point is well taken, "[w]hen interpreting federal criminal statutes that are silent on the required mental state, we read into the statute 'only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct.'" *Elonis v. United States*, 575 U.S. 723, 736 (2015) (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)). As failing to update one's address is ordinarily innocent conduct, knowing that such a failure is unlawful—and thus acting willfully—is the necessary predicate to engender criminality. *See*

*United States v. [Redacted]*, 806 F. Supp. 3d 17, 25 (D.D.C. 2025) (finding that an alleged violation of Section 1306(b) requires a showing of willfulness).

Indeed, it would make little sense to impose a lower *mens rea* requirement to convict an individual for failing to update his or her address when already legally present in the United States—a Class C misdemeanor under Section 1306(b)—than the more significant criminal activity of failing to register in the first instance—a Class B misdemeanor under Section 1306(a). This conclusion is bolstered by a review of other criminal statutes that require a finding of willfulness. For instance, the government must prove that a criminal defendant acted knowingly and willfully to secure a conviction for making misrepresentations to law enforcement officials under Title 18, United States Code, Section 1001(a)(2). *United States v. Moyer*, 674 F.3d 192, 213 (3d Cir. 2012). Such crimes, which hew more closely to *malum in se* activities than the *malum prohibitum* offense at issue here, cannot logically carry a higher *mens rea* burden.

Accordingly, the Court finds that the United States included the incorrect *mens rea* in the charging instrument, requiring its dismissal under Rule 12(b)(3)(B).[1]

## IV. Conclusion

For the reasons set forth above, the Court will grant Tituana-Villamar's Motion to Dismiss the Information. Doc. 29. A separate order shall be issued.

Date: September 8, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge

[1] As the Court finds that the Information charges an incorrect mens rea under Rule 12(b)(3), it need not decide whether it alleges that Tituana-Villamar received constitutionally sufficient notice under Rule 12(b)(1).